## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOSE ERALAND JIMENEZ CHACON,

      Petitioner,

v.                                        2:25-cv-977-DHU-KBM

TODD LYONS, DORA CASTRO, MARY
DE ANDA-YBARRA, KRISTI NOEM,
and PAM BONDI,

      Respondents.

## **MEMORANDUM OPINION AND ORDER**

      This matter comes before the Court on Petitioner Jose Eraland Jimenez Chacon's Petition for Writ of Habeas Corpus ("Petition"). Doc. 1. Petitioner argues that his Order of Supervision was arbitrarily and unlawfully revoked eight years after he was released from detention. *Id.* at 12-15. He also alleges that because he has a CAT deferral preventing his removal to Mexico and his removal to a third country is not reasonably foreseeable, his continued detention violates the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a)(6), and the Due Process Clause of the Fifth Amendment. *Id.* at 15-18. The Petition asks the Court to declare Petitioner's continued detention unlawful, issue a writ of habeas corpus ordering his release, and reinstate his Order of Supervision. *Id.* at 23-24.

      The Court held a hearing on the Petition on November 20, 2025, at which counsel for all parties was present. Having considered the parties' briefs, oral arguments, and submitted evidence, and the relevant and applicable law, the Court finds Petitioner's continued detention unlawful and orders that the Petition for Writ of Habeas Corpus shall be **GRANTED.**

# I.
## FACTUAL FINDINGS

Petitioner Jose Eraland Jimenez Chacon is a citizen of Mexico. Doc. 29 at ¶ 2. He entered the United States in 1999 and became a legal permanent resident in 2006. *Id.* at ¶¶ 1-2. In 2011 or 2012, Petitioner pled guilty to drug trafficking charges in Colorado state court and was sentenced to a period of incarceration. *Id.* at ¶¶ 3-4. He was released to the custody of Immigration and Customs Enforcement ("ICE") on February 16, 2016 and issued a notice to appear as removable under the INA because of his conviction. *Id.* at ¶ 5.

On May 26, 2016, Petitioner was ordered removed to Mexico but simultaneously granted deferral of removal under the United Nations Convention Against Torture ("CAT"), based on testimony and evidence that his life would be in danger if he returned to Mexico. *Id.* at ¶ 6. The Department of Homeland Security ("DHS") appealed this decision, but it was affirmed by the immigration judge ("IJ") on November 2, 2016. *Id.* at ¶¶ 6-8. Petitioner remained in ICE detention while the government sought a third country for removal. *Id.* at ¶¶ 8-10. On March 9, 2017, after several countries declined to accept him, the government released Petitioner under an Order of Supervision. *Id.* at ¶¶ 9-11. In total, Petitioner spent over a year in ICE custody during and after his removal proceedings in 2016 and 2017. Just over four months of that time—from November 2016 to March 2017—occurred after Petitioner's removal order became final, while ICE sought a third country for removal.

After his release in 2017, Petitioner moved to El Paso, where he has lived ever since. *Id.* at ¶ 12. Under the Order of Supervision, Petitioner was required to report to ICE periodically. *Id.* at ¶ 12. On March 1, 2023, Petitioner failed to report to his ICE appointment. *Id.* at ¶ 13.

On February 14, 2025, Petitioner was arrested at a Border Patrol checkpoint near Alamogordo, New Mexico, after agents determined he was not a citizen and had previously failed

to report to an immigration officer. *Id.* at ¶ 14. Soon after, Petitioner was transferred to the Otero County Processing Center and remained detained while DHS requested several third countries to accept him. *Id.* at ¶¶ 16, 18-19. Requests were sent to El Salvador, Honduras, Guatemala, Dominican Republic, and Peru. *Id.* at ¶¶ 19, 21, 23. DHS received denials from Honduras, Dominican Republic, and Peru. *Id.* at ¶¶ 20-21, 23. On April 25, 2025, Petitioner sent a release request to ICE, explaining that he does not pose a flight risk nor a danger to his community. *Id.* at 42 ("Exhibit F"). This request was denied. *Id.* at ¶ 25. On or about May 14, 2025, after a 90-day Post Order Custody Review, DHS determined Petitioner should remain detained because he was deemed a flight risk. *Id.* at ¶ 27.

On June 27, 2025, Petitioner's prior counsel requested to drop the CAT deferral, in hopes that he could be removed to Mexico. *Id.* at ¶ 32. On August 7, 2025, Petitioner's prior counsel filed a motion to reopen his original removal case and terminate the withholding grant. *Id.* at ¶ 33. On August 11, 2025, Petitioner applied for a stay of removal, stating that he planned to challenge his Colorado conviction because he was not advised of the immigration consequences of his plea. *Id.* at 246 ("Exhibit I"). *See also* Doc. 18 at 3 (citing Doc. 18-1 at ¶ 32). That stay was allegedly denied. Doc. 25 at 4. On August 22, 2025, Petitioner filed a motion to withdraw the motion to reopen his case and terminate CAT protection. Doc. 29 at 20 ("Exhibit A").

On August 19, 2025, after a 180-day Post Order Custody Review, Petitioner was once again determined to be a flight risk and a "public risk due to his felony drug conviction." Doc. 18-1 at ¶ 37. *See also* Doc. 29 at ¶ 39. He remained in detention while DHS continued to seek third countries for his removal. *Id.* at ¶¶ 39, 41 (indicating additional communications were sent to Middle East/East Africa Removal Division for an update on third country removal).

On September 17, 2025, an IJ granted Petitioner's Motion to Reopen his removal proceedings and the request to terminate the CAT withholding. *Id.* at ¶ 42. The IJ did not address Petitioner's motion to withdraw that motion. Doc. 25 at 5. *See also* Doc. 18-3. Petitioner timely appealed the IJ's order to the Board of Immigration Appeals ("BIA"), where it remains pending. Doc. 29 at ¶ 43. At the hearing on this matter, the parties agreed that Petitioner's CAT deferral remains legally operative during the pendency of the BIA appeal. *See* Doc. 28 at 2.

## II.
## PROCEDURAL BACKGROUND

On October 7, 2025, Petitioner filed a Petition for Writ of Habeas Corpus in this Court. In it, Petitioner argues on multiple grounds that his detention is unlawful. First, he alleges that he was not notified or given an opportunity to be heard before his Order of Supervision was effectively revoked, in violation of 8 C.F.R. § 241.4(*l*)(2) and his due process rights. Doc. 1 at 12-15. Next, because of his CAT deferral and DHS's failed attempts at identifying a third country to accept him, Petitioner contends that his removal is not reasonably foreseeable. Accordingly, under *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653, his continued detention violates due process. Doc. 1 at 15-18. Lastly, Petitioner alleges that an ICE policy memo from July 2025 states that some non-citizens will be deported to third countries with no notice whatsoever. *Id.* at 9. Based on this allegation, Petitioner expresses concern that, should ICE identify a third country to accept him, he will not receive notice and an opportunity to seek applicable relief. *Id.* at 20-21. Petitioner requests that this Court:

1) Assume jurisdiction over this matter;

2) Order that Petitioner shall not be transferred outside of the District of New Mexico, specifically Otero County, New Mexico;

3) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within seven days[1];

4) Declare that Petitioner's continued detention violates the INA and the Due Process Clause of the Fifth Amendment;

5) Issue a writ of habeas corpus ordering Respondents to release Petitioner immediately;

6) Issue an order that Petitioner's Order of Supervision be restored and that he continue supervision under the same terms as in place prior to February 14, 2025;

7) Issue an order that Petitioner be provided notice and an opportunity to request protection from removal to any third country the Respondents may identify; and

8) Grant any other further relief the Court deems just and proper.

*Id.* at 23-24.

Rather than filing a Response, Respondents filed a Motion to Dismiss the Petition on October 29, 2025. In it, the government argues that the Petition should be dismissed because (1) the Court lacks jurisdiction to review ICE's decision to execute a removal order, (2) Respondents did not violate a statutory or regulatory procedure, (3) there is no due process violation, and (4) Petitioner failed to exhaust his administrative remedies. Doc. 18 at 2. According to the government, 8 U.S.C. § 1252(g) strips district courts of jurisdiction over "any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The government contends that Petitioner's claim for habeas arises from the government's execution of a removal order against him. *Id.* at 9. Respondents further argue that this Court cannot review Petitioner's APA claim because courts lack jurisdiction to review agency action that is

_____

[1] The Court already did this, issuing an Order to Show Cause on October 15, 2025.

committed to agency discretion by law. *Id.* at 11 (citing 5 U.S.C. § 706(2)(A)). In the alternative, the government argues that it did comply with statutory and regulatory authority, and no notice was required because Petitioner was detained pursuant to ICE's discretion. *Id.* at 11-12.

Even if the Court did have jurisdiction, Respondents contend that Petitioner's due process claim fails because his removal *is* foreseeable, allowing continued detention under *Zadvydas*. According to the government, Petitioner would have already been removed to Mexico if not for his BIA appeal. *Id.* at 14. Moreover, the government argues that Petitioner was afforded the due process to which he is entitled through multiple post-order custody reviews. *Id.* at 14-15.

In addition, the government argues that Petitioner's claims are premature because he failed to exhaust administrative remedies. *Id.* at 15. The regulations governing detention after a final removal order provide for administrative review by ICE's Headquarters Post-order Detention Unit ("HQPDU") when a noncitizen claims their removal is not reasonably foreseeable. *Id.* (citing 8 C.F.R. § 241.13). Respondents argue that Petitioner is not eligible for habeas relief because he did not allege that he submitted a request for administrative review. *Id.* at 15-16. Finally, Respondents assert that this Court is without jurisdiction to order Petitioner's immediate release, to enjoin his transfer, or to order additional procedures before removal to a third country. *Id.* at 16-17.

On November 16, 2025, Petitioner filed a Response in opposition to Respondents' Motion to Dismiss. In it, Petitioner reiterates that there is no significant likelihood of removal in the reasonably foreseeable future, making his continued detention unconstitutional under *Zadvydas*. Doc. 25 at 10-11. Petitioner also disputes Respondents' argument that the Court lacks jurisdiction under 8 U.S.C. 1252(g) or (b)(9) because Petitioner does not challenge the government's decision to commence, adjudicate, or execute a removal order but rather challenges his ongoing post-removal order detention. *Id.* at 7-8. Petitioner further argues that Respondents failed to comply

with regulatory revocation procedures—and that Respondents' contention that notice and a hearing is unnecessary is wrong because the circumstances show that Petitioner's re-detention was due to violations of his conditions of release and the decision to revoke without a hearing was not made by the proper authorities. *Id.* at 12. Finally, Petitioner argues that administrative exhaustion is not required and/or would be futile because ICE has already made multiple determinations that he should remain detained. *Id.* at 13-14.

At the hearing in this matter, the Court converted Respondents' Motion to Dismiss into a Response to the Petition and converted Petitioner's Response to the Motion to Dismiss into a Reply in support of the Petition. *See* Doc. 28 at 1.[2] The Court also asked the parties to submit additional materials to confirm the facts necessary to rule on the Petition, Doc. 28 at 3, which the parties jointly submitted on December 1, 2025, *see* Doc. 29.

## II.
## LEGAL STANDARDS

### A. Jurisdiction

Habeas relief is available when a person "is in custody in violation of the Constitution or

---

[2] Respondents' Motion to Dismiss was filed in response to the Court's October 15, 2025 Order to Show Cause (Doc. 6). The applicable habeas statute does not contemplate a motion to dismiss but rather requires the custodian to "show cause" why the writ should not be granted. *See* 28 U.S.C. § 2243 ("A court . . . entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears that the applicant or person detained is not entitled thereto."). The statute's language is broad enough to encompass substantive and procedural arguments for not granting the writ. In addition, "habeas proceedings may be exempt in some circumstances from strict application of the Federal Rules of Civil Procedure[.]" *Kilgore v. Att'y Gen. of Colorado*, 519 F.3d 1084, 1088 (10th Cir. 2008). Given the plain language of § 2243 and the Court's need to resolve factual inconsistencies in the parties' filings, the Court indicated at the hearing that it would convert Respondents' Motion to Dismiss into a return—or a "Response"—under § 2243. This allows the Court to consider evidence outside of the Petition. *See Alloway v. Jordan*, 69 F. App'x 431, 433 (10th Cir. 2003). The government suffers no prejudice from this action, as the Court still considers each of the arguments set forth in its Motion to Dismiss.

laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). However, "[f]ederal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256, 133 S.Ct. 1059, 1064, 185 L.Ed.2d 72 (2013) (internal quotation and citation omitted). Several provisions of the INA limit federal jurisdiction over immigration cases. *See, e.g., Santiago v. Noem*, 2025 WL 2792588 (W.D. Tex. Oct. 2, 2025) (analyzing 8 U.S.C. § 1252(g), § 1252(b)(9), and § 1252(a)(5)).

8 U.S.C. § 1252 governs judicial review of orders of removal. At issue in this proceeding are § 1252(g) and § 1252(b)(9). Section 1252(g) strips courts of jurisdiction "to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter." This language does not "sweep in any claim that can be technically said to 'arise from' the three listed actions of the Attorney General." *Jennings v. Rodriguez*, 583 U.S. 281, 294, 138 S.Ct. 830, 841, 200 L.Ed.2d 122 (2018) (citing *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482-83, 119 S.Ct. 936, 943, 142 L.Ed.2d 940 (1999)). The Supreme Court has stated that the language "refer[s] to just those three specific actions themselves." *Id.*

Section 1252(b)(9) states that "judicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove [a noncitizen] from the United States . . . shall be available only in judicial review of a final order under this section." This provision funnels these claims into a petition for review filed with the appropriate court of appeals. *See Tazu v. Att'y Gen. of the United States*, 975 F.3d 292, 299 (3d. Cir. 2020). This section does not, however, foreclose claims challenging the length of an immigration detainee's confinement, because prolonged detention suggests that removal is not reasonably foreseeable. *Id.* (citing *Demore v. Kim*,

538 U.S. 510, 527, 123 S.Ct. 1708, 1719, 155 L.Ed.2d 724 (2003)). In *Zadvydas v. Davis*, the Supreme Court confirmed that "habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." 533 U.S. at 688.

### B. Post-Removal Detention

A removable noncitizen may be detained during his removal proceedings and after he receives an order of removal that becomes final. *See* 8 U.S.C. §§ 1225, 1226, 1231. Section 1231 governs the detention of noncitizens "during" and "beyond" the "removal period." 8 U.S.C. § 1231(a)(2)-(6). In general, when a noncitizen is ordered removed, the Attorney General shall remove them within 90 days, known as the "removal period." § 1231(a)(1)(A). The "removal period" begins once a noncitizen's removal order "becomes administratively final," § 1231(a)(1)(B), meaning the order has been affirmed by the BIA or the time for seeking review has expired, 8 U.S.C. § 1101(a)(47)(B). During the removal period, ICE "shall detain the [noncitizen]" as it conducts the removal. § 1231(a)(1)-(2). If ICE does not remove the noncitizen within the 90-day removal period, the noncitizen "shall be subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3). Noncitizens subject to certain INA provisions or determined to be a risk to the community or unlikely to comply with the order of removal "*may* be detained beyond the removal period[.]" § 1231(a)(6) (emphasis added).

However, the Supreme Court acknowledged in *Zadvydas* that "[a] statute permitting indefinite detention of a [noncitizen] would raise a serious constitutional problem." 533 U.S. at 690. As such, the Court construed § 1231(a)(6) to limit the Attorney General's discretion to detain a noncitizen beyond the removal period to only that period of time "reasonably necessary to secure removal." *Id.* at 699. "Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699-700.

Six months of post-removal order detention was held to be "presumptively reasonable." *Id.* at 701. After this point, once a noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* This presumption does not mean that every noncitizen must be released if not removed after six months in detention. *Id.* Rather, a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

## C. Administrative Exhaustion

Petitioners are ordinarily required to exhaust their administrative remedies prior to seeking a writ under 28 U.S.C. § 2241. However, the Tenth Circuit has not addressed whether this requirement applies in the immigration context, and the INA only explicitly requires exhaustion of administrative remedies when challenging a final removal order. *See* § 1252(d)(1). "[W]here Congress [has] not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992) (requiring courts to weigh the institutional interests in exhaustion against the individual interests in prompt judicial review).[3] This suggests exhaustion is not a jurisdictional requirement in this context but a prudential one.

When a noncitizen is subject to a final order of removal, 8 C.F.R. § 241.13 provides for administrative review of their post-order detention to determine whether their removal is reasonably foreseeable. While the Tenth Circuit has not clarified whether exhaustion of the §

---

[3] *McCarthy*, decided in 1992, dealt with administrative exhaustion in the context of prison litigation. In 1995, Congress passed the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e *et seq.*, which explicitly requires administrative exhaustion by prisoners. *McCarthy*'s analysis has thus been superseded by statute but only as it relates to prison litigation subject to the PLRA.

241.13 is required before pursuing habeas relief on post-order detention, several district courts have dismissed habeas petitions as premature when the Petitioner failed to comply with the procedures in § 241.13. *See, e.g., Royer v. Holder*, 2012 WL 6553114, at *3 (M.D. Fla. Dec. 14, 2012) (dismissing habeas petition without prejudice because petitioner "does not assert that he has submitted a written request for release to Headquarters or that any determination has been made by Headquarters"); *Meighan v. Chertoff*, 2008 WL 1995374, at *2 (S.D. Tex. May 6, 2008) (dismissing habeas petition without prejudice when petitioner had not shown that he had been in custody for more than 6 months nor that he had exhausted the administrative remedies put in place after *Zadvydas*); *Saykin v. Holder*, 2010 WL 1839413, at *2 (D. Mass. May 5, 2010) (denying without prejudice petitioner's petition for writ of habeas corpus on other grounds but noting that if noncitizen files another habeas petition, he must allege whether he submitted a request to Headquarters and "what action, if any, the government took on such a request or on any other request for custody review").

When exhaustion is required, "[a] narrow exception . . . applies if a petitioner can demonstrate that exhaustion is futile." *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010).

### III.
### DISCUSSION

**A. This Court has jurisdiction over Petitioner's challenge to his detention.**

In their Motion to Dismiss, Respondents claim that 8 U.S.C. § 1252(g) and (b)(9) preclude this Court's jurisdiction because the government's detention of Mr. Jimenez Chacon was done for the purpose of executing his removal order. Doc. 18 at 9-10. Respondents cite to multiple cases where courts have declined to exercise jurisdiction over a challenge to revocation of release and/or pre-removal detention. *See Tazu v. Att'y Gen. of United States.*, 975 F.3d 292, 298 (3d. Cir. 2020) (holding that "a brief door-to-plane detention is integral to the act of 'execut[ing] [a] removal

order."); *E.F.L. v. Prim*, 986 F.3d 959, 965 (7th Cir. 2021) (declining to review a habeas petition seeking to stay removal while the petitioner sought administrative relief); *Westley v. Harper*, 2025 WL 592788, at *6 (E.D. La. Feb. 24, 2025) (holding that revocation of release was unreviewable because it was "inextricably intertwined" with a petitioner's removal in the reasonably foreseeable future); *Najera v. Sessions*, 2018 WL 11447065, at *3 (D. Ariz. May 15, 2018) (finding ICE's decision to revoke an order of supervision unreviewable because it "arose from" the decision to execute a removal order). Petitioner argues that § 1252 does not strip this Court of jurisdiction because he does not challenge the government's discretion to execute the removal order against him. Rather, he challenges the basis for and length of his post-removal order detention, which he describes as "a heartland habeas corpus case." *See* Doc. 25 at 7-8.

There are important factual distinctions between this case and those cited by Respondents which demonstrate the attenuated link between Mr. Jimenez Chacon's detention and the execution of his removal order. Unlike the petitioner in *E.F.L. v. Prim*, Mr. Jimenez Chacon does not seek to stay his removal pending some administrative remedy. At the time he was re-detained, Petitioner already had CAT deferral, and his argument in this proceeding is not that his removal should be stayed but that his removal is not reasonably foreseeable. And unlike the petitioners in *Tazu*, *Westley*, and *Najera*, the evidence in the record does not suggest that Mr. Jimenez Chacon's removal was or is impending, let alone reasonably foreseeable, such that his re-detention was a brief and integral part of executing his removal order. *Cf. Tazu*, 975 F.3d at 298 (emphasizing the Attorney General's "discretionary power to detain [a noncitizen] *for a few days*" in order to complete a removal (emphasis added)).

Mr. Jimenez Chacon was released on supervision in 2017 after DHS was unable to find a third country to accept him for removal. Doc. 1 at ¶¶ 1, 29; Doc. 18-1 at ¶¶ 12-14. When ICE re-

detained Petitioner in February 2025, they still had no country to which to deport him—and his CAT deferral remained active such that he could not be deported to Mexico. Before Mr. Jimenez Chacon moved to terminate his CAT deferral, he languished in custody for at least four months while ICE looked, without success, for a third country to which to deport him. Doc. 1 at ¶¶ 31, 33; Doc.18-1 at ¶¶ 18-24. To this day, he remains detained with a CAT deferral in place, and there appears to be no third country that has agreed to accept him. This represents a much longer detention than those contemplated in the above-cited cases, making it less likely that Petitioner's detention is directly linked to his removal order. And ICE could have continued seeking a third country without detaining Mr. Jimenez Chacon, in contrast to the above-cited cases where the purpose of detention was to immediately remove the petitioner. The government's detention of Petitioner lacks the direct link to his removal proceedings or to the execution of his removal order to fall under the ambit of § 1252(g) or § 1252(b)(9). Therefore, these provisions do not defeat the Court's exercise of jurisdiction in this matter.

**B.  Petitioner's continued detention violates § 1231 of the INA.**

      1.  <u>Petitioner has been detained for at least 11 months for the purposes of analysis under</u> <u>*Zadvydas*.</u>

At the hearing in this matter, the government urged this Court not to count the three months of Petitioner's detention between moving to terminate his CAT deferral and withdrawing the motion to terminate. *See* Doc. 28 at 2. Counsel for Respondents argued that Petitioner should not be rewarded for changing his mind regarding his CAT deferral, as it is possible that he would have been removed to a third country—or to Mexico, after the termination was granted—if not for the Petitioner's changed position. *Id.* Discounting these three months would put Petitioner's current period of detention at or within the presumptively reasonable six month "limit" set by *Zadvydas*.

The government's position fails to account for the four months that Petitioner spent in detention in late 2016 and early 2017 before he was released on supervision. At least four district courts around the country have held that the clock does not "start over" for purposes of *Zadvydas* if a person is re-detained. *See, e.g., Villanueva v. Tate*, 2025 WL 2774610, at *9 (S.D. Tex. Sept. 26, 2025); *Nguyen v. Scott*, 2025 WL 2419288, at *13 (W.D. Wash. Aug. 21, 2025); *Sied v. Nielson*, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018); *Chen v. Holder*, 2015 WL 13236635, at *2 (W.D. La. Nov. 20, 2015) ("Surely, under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government, as was done in this case, while technically not in violation of the presumptively reasonable jurisprudential six month removal period, in essence results in an indefinite period of detention, albeit executed in successive six month intervals."). Three district courts have seemingly held the opposite. *See Guerra-Castro v. Parra*, 2025 WL 1984300, at *4 (S.D. Fla. July 17, 2025); *Thai v. Hyde*, 2025 WL1655489, at *3 (D. Mass June 11, 2025); *Meskini v. Att'y Gen. of United States*, 2018 WL 1321576 (M.D. Ga. Mar. 14, 2018). This Court, however, is persuaded by the reasoning in *Chen* and is disinclined to allow such gamesmanship by the government. *See also Villanueva*, 2025 WL 2774610, at *9 (coming to a similar conclusion). Therefore, even if the Court discounts the three months between Petitioner's change in position on the termination of his CAT deferral, he has still spent at least eleven months in detention when considering the time he spent detained eight years ago. Respondents' argument thus does not support a presumption that Petitioner's detention is reasonable.

2.   Petitioner's removal is not "reasonably foreseeable."

In *Zadvydas*, the Supreme Court established that a noncitizen may only be detained so long as is "reasonably necessary to bring about [their] removal from the United States." 533 U.S. at 689. And six months was found to be presumptively reasonable. *Id.* at 701. After the six-month

mark, if a noncitizen provides good reason to believe their removal is not "significantly likely in the reasonably foreseeable future[,]" the burden shifts to the government to rebut this showing or release the noncitizen. *Johnson v. Guzman Chavez*, 594 U.S. 523, 529, 141 S.Ct. 2271, 2282, 210 L.Ed.2d 656 (2021) (citing *Zadvydas*, 533 U.S. at 701).

The evidence before the Court demonstrates that Petitioner's removal is not significantly likely to occur in the reasonably foreseeable future. Both parties agree that Petitioner's CAT deferral remains active while his BIA appeal is pending. *See* Doc. 28 at 2. This means that Petitioner cannot be removed to Mexico, at least until the appeal is resolved. The timeline of the appeal is unknown and could extend Petitioner's detention by several more months. In addition, if Petitioner wins his appeal, his CAT deferral will remain in place indefinitely. The government has also not been able to identify a third country to accept Petitioner. Like the petitioners in *Zadvydas*, the government has tried but failed for over six months to secure Mr. Jimenez Chacon's removal to a third country.  In fact, between 2016 and 2025, at least five countries have declined to accept him. *See* Doc. 18-1 at ¶¶ 12-13, 22-24. The remote prospect of removal—to a hypothetical third country that may eventually choose to accept him—does not make Petitioner's removal reasonably foreseeable. *See Zadvydas*, 533 U.S. at 702. Petitioner has thus met his initial burden under *Zadvydas*.

The government has failed to rebut this showing or otherwise justify continued detention. Aside from briefly mentioning that they reached out to the Middle East/East Africa Division about third country removal, *see* Doc. 18-1 at ¶ 38, Respondents have provided no indication that a third country is likely to accept Petitioner in the reasonably foreseeable future. Even if one did, Petitioner may be entitled to notice and an opportunity to seek protection from removal, further prolonging his detention should he be allowed to remain in custody. *See* 8 U.S.C. § 1231(b)(3)(A).

At the hearing, counsel for the government argued that detention longer than six months may be reasonable in this case given the difficulty of securing third country removal because of Petitioner's criminal record. *See* Doc. 28 at 2. But *Zadvydas* itself dealt with petitioners who had significant criminal records—arguably more serious than Mr. Jimenez Chacon's—which likely obstructed their prompt removal to a third country. *See* 533 U.S. at 684-685. One of the *Zadvydas* petitioners even had a history of flight from criminal and deportation proceedings. *Id.* The Supreme Court nevertheless held six months was a presumptively reasonable period to bring about removal and did not create a carveout for noncitizens with criminal records whose acceptance by a third country might be more difficult to secure. This argument fails to justify Mr. Jimenez Chacon's continued detention beyond six months.

Allowing Petitioner's continued detention would more closely reflect the Fifth Circuit's rule, rejected by the Supreme Court in *Zadvydas*, which allowed indefinite detention so long as the government attempts in good faith to effectuate removal. *See id.* at 702. The Supreme Court has made clear that the INA—and the Due Process Clause—demands more. Because Petitioner has been detained more than six months and his removal is not reasonably foreseeable, his ongoing detention violates the INA.

## C.  Administrative exhaustion, to the extent it is required, should be waived here.

Respondents argue that, as a prudential matter, this Court should decline to rule on the Habeas Petition because Petitioner has not completed the administrative review process set out in 8 C.F.R. § 241.13. Doc. 18 at 15. When Congress has not explicitly required exhaustion by statute, "sound judicial discretion governs." *McCarthy*, 503 U.S. at 144. However, the Supreme Court has made clear that courts must exercise this discretion "in a manner consistent with congressional intent and any applicable statutory scheme." *Id.* This requires the Court to "balance the interest of

the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion"—namely, the interests in protecting administrative agency authority and promoting judicial efficiency. *Id.* at 145-46.

*McCarthy* provides helpful guidance for achieving such a balance. In that case, the Supreme Court first identified two situations relevant to the agency's authority where concerns favoring exhaustion apply with particular force: (1) "when the action under review involves exercise of the agency's discretionary power[,]" and (2) when the agency proceedings in question allow the agency to apply its special expertise." *Id.* at 145. The Court also noted that exhaustion promotes judicial efficiency by allowing the agency an opportunity to correct its own errors and/or by producing a useful record for subsequent judicial consideration, "especially in a complex or technical factual context." *Id.* The Court then points to precedent recognizing three broad sets of circumstances where the individual interests at stake weigh heavily against requiring exhaustion because an administrative remedy might be inadequate: (1) where it "occasion[s] undue prejudice to subsequent assertion of a court action[,]" (2) where there is some doubt as to whether the agency can grant effective relief, and (3) "where the administrative body is shown to be biased or has otherwise predetermined the issue before it." *Id.* at 146-49.

None of these circumstances—weighing for or against exhaustion—are particularly applicable in this case. First, while decisions about removal and detention certainly fall within DHS and ICE's discretion, possibly weighing in favor of exhaustion, Petitioner's Petition centers on the foreseeability of his removal in light of his prolonged detention. ICE's discretion to continue detaining someone whose removal is not reasonably foreseeable is cabined by *Zadvydas* and, more precisely, an individual's due process rights. And the foreseeability of removal depends not upon ICE's discretion but the feasibility of identifying a third country for removal, which is outside of

the agency's control. Nor does such a determination require the exercise of agency expertise. The gravamen of the Petition in this case concerns Petitioner's due process rights. Courts are well-equipped to analyze due process claims, especially given the post-removal period detention framework laid out in *Zadvydas* and its progeny. Beyond this, judicial efficiency concerns are less relevant here because the factual context is not particularly complex or technical.

It also does not seem that the three circumstances weighing against exhaustion identified in *McCarthy* are applicable. Petitioner has not argued that a request for release to the HQPDU would prejudice subsequent court action or that the HQPDU cannot grant effective relief. And while Petitioner does assert that exhaustion would be futile because headquarters has already reviewed and denied past requests for release, Doc. 25 at 14, the evidence suggests that ICE has not considered release given the foreseeability—or lack thereof—of Petitioner's removal, Doc. 29 at 36-37 ("Exhibit C"), 39-41 ("Exhibit E").[4] Instead, ICE's past custody reviews and Petitioner's request for release seemingly focused on whether he is a danger to the community and/or a flight risk. *Id. See also* Exhibit F. And there is no evidence in the record suggesting that the agency's position on this matter is otherwise biased or predetermined.

There are, however, significant individual liberty interests at stake in this case that weigh in favor of immediate judicial review. In *Zadvydas*, the Supreme Court highlighted the due process concerns inherent in indefinite detention. 533 U.S. at 690-96. Mr. Jimenez Chacon is in the very

---

[4] In another recent case in this District, Chief Judge Gonzales found that requiring exhaustion of administrative remedies *would* be futile where ICE headquarters had already evaluated the petitioner's custody and decided to continue her detention. *See Salazar-Martinez v. Lyons et al.*, 2025 WL 3204807, at *1 (D.N.M. Nov. 17, 2025). With additional information about how the headquarters custody review process in *Salazar-Martinez* compares to the custody reviews in this case, this Court might be persuaded that requiring exhaustion in this case would also be futile. However, the Court does not have this information and need not analyze the futility exception here given the analysis on exhaustion to follow.

position that the Court in *Zadvydas* sought to prevent, having spent at least 11 months in immigration detention while awaiting removal to some unknown third country that has yet to accept him, despite numerous attempts by the U.S. government to identify one. *See id.* at 699. After the presumptive six-month window and once Petitioner provides reason to believe his removal is not significantly likely in the reasonably foreseeable future, the burden is on the government to justify continued detention by showing that removal is reasonably foreseeable. *Johnson v. Guzman Chavez*, 594 U.S. at 529. Requiring Petitioner to submit a request for release to HQPDU at this point would place the burden back on him and further prolong his already lengthy detention. Weighing Mr. Jimenez Chacon's liberty interests against the institutional purposes of administrative exhaustion, which are not particularly relevant here, the Court finds that Petitioner's failure to exhaust administrative remedies pursuant to § 241.13 does not bar habeas relief in this case.

### D.  The Court need not decide the legality of Petitioner's initial arrest and the revocation of his supervision.

Under 8 C.F.R. § 241.4(*l*)(1), a noncitizen facing revocation of release for violating conditions of release is entitled to notice and an informal interview. By contrast, § 241.4(*l*)(2) allows for revocation of release without this process when the decision is made in the discretion of either the Executive Associate Commissioner or, when the circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner, a district director. At least one other district court has found that the revocation of a noncitizen's Order of Supervision violated the applicable governing statutes and regulations when the noncitizen received no notice and the government provided no evidence that release was "lawfully revoked by someone with the authority to do so and for a reason lawfully permitted[.]" *See Villanueva v. Tate*, 2025 WL 2774610, at *6-7.

In this case, the evidence before the Court suggests that Petitioner was arrested and re-detained because he violated his conditions of release by failing to report to an ICE appointment in 2023. *See* Doc. 29 at ¶¶ 13-14. Respondents suggest Petitioner was not entitled to this process because his Order of Supervision was revoked not because he violated conditions of release, but simply "in the discretion of ICE," which does not require notice or an interview under § 241.4(*l*)(2). But the provision cited by Respondents only allows for revocation of release when made by certain officers, described above, and for certain reasons outlined in the regulation. The government has provided no information about who made the decision to revoke Petitioner's Order of Supervision, and whether it complied with § 241.4(*l*)(2) such that no notice or hearing was required. This provides the Court reason to believe that the revocation of Petitioner's release without due process may have been unlawful.

However, without knowing who revoked Petitioner's Order of Supervision and why, the Court cannot determine with certainty the legality of his arrest and re-detention. Either way, because the Court has determined that Petitioner's continued detention violates the INA under *Zadvydas*, Mr. Jimenez Chacon is entitled to immediate release. The *Zadvydas* Court explicitly contemplated release as the appropriate remedy for that sort of violation. *See* 533 U.S. at 701. This Court's finding in Subsection B thus provides sufficient grounds to grant Petitioner's request for release, without needing to determine whether Petitioner's arrest and detention without notice or a hearing was lawful in the first place.

## IV.
## CONCLUSION

For the reasons stated above, Petitioner's Petition for Writ of Habeas Corpus is **GRANTED**.

**IT IS THEREFORE ORDERED** that Respondents release Petitioner from custody within 24 hours of this Order and restore Petitioner's Order of Supervision under the same terms as were in place before February 14, 2025.

**IT IS SO ORDERED.**

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE